IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMERICAN FURNITURE WAREHOUSE CO., *Plaintiff/Appellant*,

*v.*

TOWN OF GILBERT, *Defendant/Appellee*.

No. 1 CA-CV 16-0773
FILED 7-10-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-009133
The Honorable James T. Blomo, Judge (*Retired*)

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COUNSEL

Berry Riddell, LLC, Scottsdale
By Martin A. Aronson, Jeffrey D. Gross
*Counsel for Plaintiff/Appellant*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr., Kim S. Alvarado
*Counsel for Defendant/Appellee*

Pacific Legal Foundation, Sacramento, California
By James S. Burling
*Counsel for Amicus Curiae Pacific Legal Foundation*

---

**OPINION**

Chief Judge Samuel A. Thumma delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Kenton D. Jones joined.

---

**T H U M M A**, Chief Judge:

¶1       This appeal arises out of the payment of a development fee, imposed by a town ordinance, as a condition of securing a permit to develop land. Plaintiff American Furniture Warehouse Co. (AFW) appeals from the grant of summary judgment in favor of defendant Town of Gilbert. AFW argues that the required payment was an unconstitutional taking and, alternatively, that AFW was denied a required appeals hearing. Although the required payment was not unconstitutional, because AFW has a right to a statutory exaction appeals hearing, summary judgment is affirmed in part and vacated in part and this matter is remanded for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶2       AFW operates regional furniture distribution facilities, each typically consisting of a building that includes a showroom (which is open to the public and is used for retail sales), a warehouse and a mezzanine (including an office and shops to assemble and repair furniture). AFW decided to develop such a facility in Gilbert, with a building covering nearly 15 acres of a 40-acre parcel of land that AFW purchased in early 2013. The 630,290 square-foot building includes a 177,092 square-foot retail showroom (about 28 percent of the building), a 397,800 square-foot warehouse and 50-door loading dock (more than 63 percent), a 49,798 square-foot mezzanine (nearly 8 percent) and a 5,600 square-foot maintenance area (less than 1 percent).

¶3       To obtain development permits, AFW was required to pay Gilbert various fees, including a traffic signal System Development Fee (SDF). In 2009, the town adopted the traffic signal SDF in Gilbert Ordinance 2226, based on projected traffic patterns and "growth-related costs allocated to traffic signals." The traffic signal SDF imposes on new commercial structures different per square foot rates using "Retail," "Office," "Industrial" or "Other Nonresidential" categories. The per square foot rates differ significantly:

| Category | Rate |
| --- | --- |
| Retail | $1.593 per square foot |
| Office | $0.570 per square foot |
| Industrial | $0.405 per square foot |
| Other Nonresidential | "To be determined by the Town Engineer. The Town Engineer will estimate trip generation and determine the traffic [signal SDF] based on the most closely aligned category of either: retail, office or industrial. The [SDF] then is assessed" using Retail, Office or Industrial rates. |

These categories are not defined in Ordinance 2226, which also does not include provisions addressing multiple or mixed uses on a property. For multiple or mixed uses, Gilbert identifies one category for the entire project based on "the main purpose of the building."

¶4        Gilbert classified AFW's building as Retail. Applying the $1.593 per-square-foot Retail rate to the entire 630,290 square-foot building, Gilbert required AFW to pay more than $1 million as a traffic signal SDF. Paying under protest, AFW timely challenged the requirement.

¶5        AFW argued the building is Industrial (yielding a lower traffic signal SDF), because that category more closely described AFW's development. AFW also argued that applying the Retail rate was not reasonably related to costs the development would impose on Gilbert. AFW also requested a statutory exaction appeals hearing. *See* Ariz. Rev. Stat. (A.R.S.) § 9-500.12(A)(1) (2018)[1] (affording property owners an administrative appeal from "a dedication or exaction as a condition of granting approval for the use, improvement or development of real property," unless the dedication or exaction is "required in a legislative act by the governing body of a city or town that does not give discretion" in determining "the nature or extent of the dedication or exaction").

¶6        Gilbert denied AFW's protest, stating land use (not trip counts, as AFW argued) determines the traffic signal SDF category; "the main purpose of the building is to sell furniture and ship furniture to customers," meaning the Retail category applied and, as a result, the Other

_____

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Nonresidential category did not. Concluding that Ordinance 2226 is a legislative act, meaning AFW had no right to appeal, Gilbert also denied AFW's request for a statutory exaction administrative appeals hearing. In July 2013, AFW timely filed this case in superior court. AFW's claims were resolved in two rounds of summary judgment motions.

¶7　　　　The first round addressed AFW's original complaint. AFW sought to recover the traffic signal SDF paid under protest, alleging the fee was an unconstitutional exaction or taking (Counts 1, 3 and 6). AFW also challenged Gilbert's denial of its request for a statutory exaction administrative appeals hearing (Counts 2 and 4).[2] After briefing and argument on competing summary judgment motions, the court ruled in favor of Gilbert and against AFW on Counts 1, 3 and 6, stating the traffic signal SDF "is a legislative act that carries a presumption of validity." Finding the appeal hearing claims (Counts 2 and 4) should have been filed as a special action, the court allowed AFW to amend its complaint to seek special action review.

¶8　　　　AFW filed an amended pleading and the parties filed the second round of competing summary judgment motions, which addressed those amended Counts seeking special action review. After briefing and argument, the court ruled in favor of Gilbert and against AFW. The court found Gilbert's denial of AFW's "protest is supported by competent evidence and [the] plain language application of the Town Code" and "that the denial is not arbitrary, capricious or an abuse of discretion." Entry of final judgment followed, *see* Ariz. R. Civ. P. 54(c), and this court has jurisdiction over AFW's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶9　　　　Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The court "view[s] the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enter., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). A ruling granting summary judgment is reviewed de novo, "both as to whether

---

[2] AFW also alleged a proposition violation (Count 5), which was dismissed by agreement of the parties and is not at issue here.

there are any genuine issues of material fact and as to whether the moving party is entitled to judgment as a matter of law." *Greenwood v. State*, 217 Ariz. 438, 442 ¶ 13 (App. 2008).

## I. AFW Did Not Waive Its Claims Resolved By The First Summary Judgment Ruling.

**¶10** Gilbert argues AFW waived its right to challenge on appeal claims that were resolved in the first summary judgment ruling (Counts 1, 3 and 6) because AFW's amended complaint did not reassert those claims.[3] In essence, Gilbert is arguing that AFW was required to do a pointless act (reassert claims that the superior court had already resolved against AFW by summary judgment) and that the failure to do so results in a waiver of AFW's right to challenge the court's ruling on appeal.

**¶11** The authority Gilbert cites stands for the proposition that an amended complaint supersedes the pleading it amends because "a plaintiff may not pursue two complaints in the same action." *Mohave Concrete and Materials, Inc. v. Scaramuzzo*, 154 Ariz. 28, 30 (App. 1987) (citing *Campbell v. Deddens*, 21 Ariz. App. 295, 297 (1974)). But the fact that only one complaint is operative at any given time does not mean, as Gilbert asserts, that an amended pleading causes a prior pleading to disappear. This is particularly true where dispositive rulings on the merits resolved claims in the prior complaint. Although scant, Arizona case law runs counter to Gilbert's argument. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349 ¶ 15 (App. 2007) (exercising appellate jurisdiction challenging dismissal of claims asserted in original complaint but not re-asserted in amended complaint, in a subsequent appeal from dismissal of claims in amended complaint). Accordingly, AFW did not waive its right to challenge on appeal claims resolved against it in the first summary judgment ruling.

## II. The Traffic Signal SDF Is A Generally Applicable Legislative Act That Is Constitutional As Applied.

**¶12** AFW argues that, as applied, the traffic signal SDF was not a valid "generally applicable, legislatively-imposed fee" but, instead, "was

---

[3] Gilbert also states AFW could have "sought entry of" a partial final judgment "to preserve and appeal these claims." Although that statement is true, *see* Ariz. R. Civ. P. 54(b), Gilbert has not shown that AFW waived its appeal rights by not seeking entry of partial final judgment.

an adjudicative act subject to" the *Dolan v. City of Tigard,* 512 U.S. 374 (1994) and *Nollan v. California Coastal Commission,* 483 U.S. 825 (1987) line of cases (*Nollan/Dolan*). In the alternative, even if the traffic signal SDF is construed as a generally applicable, legislatively-imposed fee, AFW argues *Nollan/Dolan* scrutiny applies and it is unconstitutional under *Nollan/Dolan*.[4] Because AFW has not shown that application of the traffic signal SDF was adjudicative or that *Nollan/Dolan* applies, AFW's constitutional challenges fail.

### A.     The Traffic Signal SDF Is A Generally Applicable Legislatively Imposed Fee.

**¶13**     AFW argues application of the traffic signal SDF in this case is "an adjudicative act subject to" *Nollan/Dolan*. Before the superior court, AFW conceded that Gilbert's enactment of the traffic signal SDF "was a legislative act." The issue, then, is whether a challenge to the application of a generally applicable, legislatively imposed fee is a challenge to an adjudicative act for purposes of AFW's claim that the fee imposed was an unconstitutional taking.

**¶14**     AFW bases its argument on *Wennerstrom v. City of Mesa*, 169 Ariz. 485 (1991), and *Redelsperger v. City of Avondale*, 207 Ariz. 430 (App. 2004). *Wennerstrom* addressed whether city council actions approving a project to widen a street were legislative (meaning they were subject to referendum under the Arizona Constitution) or administrative (meaning they were not). *See* 169 Ariz. at 488 (quoting Ariz. Const. art. IV, pt. 1 § 1(8)). In that distinguishable context, *Wennerstrom* held the city council actions were "not legislative in character and thus [were] not subject to referendum." 169 Ariz. at 495. *Redelsperger* similarly held that "the approval of a conditional use permit" was not subject to referendum. 207 Ariz. at 431 ¶ 1. Neither case, however, addressed whether the approvals were adjudicative.

---

[4] AFW does not facially challenge the traffic signal SDF, its categories or its per square foot rates. It also does not claim that a nexus is lacking between Gilbert's legitimate interest in the traffic signal SDF and the payment of the traffic signal SDF or any irregularity in the classification rates under A.R.S. § 9-463.05.

¶15 At most,[5] *Wennerstrom* and *Redelsperger* suggest that application of the traffic signal SDF here was administrative. *See Wennerstrom*, 169 Ariz. at 489 ("'The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.'") (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.56 at 266 (3d rev. ed. 1989)); *Redelsperger*, 207 Ariz. at 437-38 ¶ 28 ("After due consideration, we conclude that the issuance of a conditional use permit is an administrative act.") (citing authority). Suggesting an action was administrative for purposes of referendum eligibility, however, does not address whether it was adjudicative in assessing whether the action was an unconstitutional taking.[6] AFW has not shown the superior court erred in concluding the traffic signal SDF "is a legislative act that carries a presumption of validity."

### B. Application Of The Traffic Signal SDF Here Was Not Unconstitutional Under *Nollan/Dolan.*

¶16 As phrased by the parties, the issue is whether application of the traffic signal SDF is a proper, constitutional fee required for the development of land or is an improper, unconstitutional taking. Although phrased in a binary fashion, the boundary between the two is fuzzy, meaning analyzing individual cases is necessary to address AFW's challenge.

¶17 The *Nollan/Dolan* test examines the appropriate analytical framework for assessing whether a government-imposed requirement for developing property is a taking. *Nollan* held that a required dedication of a public easement across private property to obtain a building permit was a taking. 483 U.S. at 831. The mandated easement meant "a 'permanent physical occupation' has occurred," thereby triggering the right to just compensation. *Id.* at 832. *Nollan* found the "essential nexus" between "legitimate state interests" and the required easement, which might have

---

[5] *See Wennerstrom*, 169 Ariz. at 496 (Feldman, V.C.J., dissenting) ("The court adopts no specific test for distinguishing between legislative and administrative acts.").

[6] Although AFW argues Gilbert was required to exercise discretion in applying the traffic signal SDF, *Redelsperger* noted that, in the referendum context, "[t]he more discretion afforded, the more likely the act is legislative." 207 Ariz. at 434 ¶ 16.

removed the requirement from a takings analysis, was lacking. 483 U.S. at 837; *see also Dolan*, 512 U.S. at 386.

¶18        *Dolan* involved a city's requirement that a developer dedicate a portion of her land for flood control and traffic improvements as a condition of securing necessary permitting. *Dolan* set the analytical table with a quote worth repeating here:

> The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." One of the principal purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."
>
> . . . .
>
> On the other side of the ledger, the authority of state and local governments to engage in land use planning has been sustained against constitutional challenge [generations ago]. "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." A land use regulation does not effect a taking if it "substantially advance[s] legitimate state interests" and does not "den[y] an owner economically viable use of his land."

*Dolan*, 512 U.S. at 383-85 (citations omitted). *Dolan* added that the cases cited for these propositions differed in "two relevant particulars from the present case:" (1) "they involved essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel" and (2) "the conditions imposed were not simply a limitation on use the petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city." *Id.* at 385.

**¶19**         On those facts, and building on *Nollan*, *Dolan* stated that it "must first determine whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city. If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development." 512 U.S. at 386. Finding the "essential nexus" existed, *Dolan* adopted what it called a "rough proportionality" test for the required degree of connection. *Id.* at 386, 391. Although "[n]o precise mathematical calculation is required," this test required the city to "make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391.

**¶20**         *Dolan* then suggested a dichotomy in addressing challenges to requirements for the issuance of a land development permit based on whether the requirement was imposed by "generally applicable zoning regulations" or by "an adjudicative decision to condition" development "on an individual parcel." *Id.* at 391 n.8. When required by the application of "generally applicable zoning regulations, the burden properly rests on the party challenging the regulation to prove that it constitutes an arbitrary regulation of property rights." *Id.* By contrast, when the requirement is a result of an "adjudicative decision to condition [the] application for a building permit on an individual parcel," the government has the burden to justify the decision. *Id. Dolan* did not expound on when the "rough proportionality" test applied, or how the dichotomy between the "generally applicable zoning regulations" and "adjudicative decision" unique to a parcel applied in resolving a challenge, questions that are squarely presented here. A few years after *Dolan*, however, the Arizona Supreme Court provided guidance relevant here.

**¶21**         *Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale* indicated that *Dolan*'s "rough proportionality" test does not apply to generally applicable zoning regulations ("a generally applicable *legislative* decision by the city"), as opposed to "a city's *adjudicative* decision to impose a condition tailored to the particular circumstances of an individual case." 187 Ariz. 479, 486 (1997). In *City of Scottsdale*, the city studied the amount of water needed to support new development. *Id.* at 480. Based on that study, the city adopted an ordinance setting a water resources development fee for any new development. *Id.* at 481. The fee was "$1,000 for single family residence, $600 per apartment unit, and $2,000 per acre foot of consumption by other uses." *Id.* In language that appears to be either an alternative holding or dicta, *City of Scottsdale* found the water resources development fee was a "generally applicable *legislative* decision," meaning that

*Nollan/Dolan* did not apply, while acknowledging that the precise "question has not been settled by the [United States] Supreme Court." *Id.* at 486.[7]

¶22        *City of Scottsdale* cited additional reasons why the "rough proportionality" test did not apply to generally applicable legislative decisions, two of which merit mention here. First, it found "good reason" to distinguish adjudicative rezoning, which may involve "regulatory leveraging that occur[s] when the landowner must bargain for approval of a particular use of its land," from "a generally applicable legislative decision" that does not involve a "risk of that sort of leveraging." *Id.* at 486. Second, it noted *Dolan* involved a requirement that the landowner "cede a part of her property to the city, a particularly invasive form of land regulation," while Scottsdale's water resources development fee involved payment of "a fee, a considerably more benign form of regulation." *Id.*

¶23        Applying *City of Scottsdale*, the traffic signal SDF was established by an ordinance applicable to all development based upon a fee schedule that AFW does not challenge. AFW's appeal challenges payment of the traffic signal SDF, a generally applicable legislative fee. It is not the product of Gilbert's "*adjudicative* decision to impose a condition tailored to the particular circumstances of an individual case" that would risk "regulatory leveraging" and does not involve AFW transferring a portion of the property to Gilbert. Because the traffic signal SDF is analogous to the fee imposed in *City of Scottsdale*, the superior court properly found it "is a legislative act that carries a presumption of validity," tacitly concluding *Nollan/Dolan* does not apply.

¶24        AFW next argues that the legislative/adjudicative dichotomy discussed in *Dolan* and *City of Scottsdale* is "jurisprudentially questionable" because both effectuate a taking. This argument fails for two very different reasons. First, *City of Scottsdale* recognized this precise distinction:

> In *Dolan,* the Chief Justice was careful to point out that the case involved a city's *adjudicative* decision to impose a condition tailored to the particular circumstances of an individual case. Because the Scottsdale case involves a generally

---

[7] Even if dicta (as AFW argues), the Arizona Supreme Court's analysis in *City of Scottsdale* is persuasive in this court. *Cf. Alejandro v. Harrison*, 223 Ariz. 21, 25 ¶ 12 (App. 2009) (noting statements not essential to ultimate decision are "merely persuasive" but not precedential).

applicable *legislative* decision by the city, the court of appeals thought *Dolan* did not apply. We agree, though the question has not been settled by the Supreme Court.

187 Ariz. at 486 (citations omitted).

**¶25** Second, by statute, the traffic signal SDF "shall result in a beneficial use to the development" and "shall not exceed a proportionate share of the cost of necessary public services . . . needed to provide necessary public services to the development." A.R.S. § 9-463.05(B)(1) & (3). These statutory requirements are akin to *Dolan*'s "rough proportionality" test, *see City of Scottsdale*, 187 Ariz. at 483-84,[8] and limit what development fees can be imposed. These statutory requirements also negated AFW's concerns about municipalities getting a "free pass" by only imposing development fees established by generally applicable legislative decision.

**¶26** AFW next argues *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), rejected the legislative/adjudicative dichotomy. In *Koontz*, a land owner applied for required water permits to develop a specific parcel of land. *Id.* at 601. The government conditioned issuance of those permits upon the landowner's compliance with one of two requirements: deeding to the government an easement over land not being developed or requiring the land owner to pay for improvements to non-contiguous government-owned land. *Id.* at 601-02. Nothing suggested that these conditions were based on generally applicable zoning requirements; instead, *Koontz* addressed the constitutionality of a government's "adjudicative decision" unique to a parcel. In that factually distinct context, *Koontz* is significant here both for what it did and did not do.

**¶27** *Koontz* held that, when applicable, *Nollan/Dolan* provides the proper analysis when the government conditions issuance of a permit either upon the payment of a fee or upon the transfer of property. *Id.* at 619.

---

[8] These statutory requirements also are consistent with the synthesis of cases from other states in *City of Scottsdale* as requiring that a generally applicable legislative development fee "be factually related to the need for public services created by the proposed development" and that "the nature and extent of the exaction must bear a reasonable relationship to that portion of the public burden created by the proposed development." 187 Ariz. at 483; *see also* S.B. 1525, 50th Leg., 1st Gen. Reg. Sess. (Ariz. 2011) (amending A.R.S. 9-463.05 by replacing "reasonable relationship" with "proportionate share").

What *Koontz* did not do was replace, negate or (given the facts) even address *Dolan*'s legislative/adjudicative dichotomy discussed in *City of Scottsdale*. As a result, *Koontz* did not hold that *Dolan* applied to generally applicable legislative development fees like those imposed in the traffic signal SDF. *Id.* at 614 n.2, 617 ("because the proposed offsite mitigation obligation in this case was tied to a particular parcel of land, this case does not implicate the question whether monetary exactions must be tied to a particular parcel of land in order to constitute a taking;" "[t]his case does not require us to say more"); *see also id.* at 628 (Kagan, J., dissenting) ("Maybe today's majority accepts [the legislative versus adjudicative] distinction; or then again, maybe not."). *Koontz* did not abrogate the legislative/adjudicative dichotomy as AFW suggests.

¶28 Finally, AFW asserts "there is no principled distinction between an exaction imposed administratively and one imposed legislatively." But that argument runs counter to *Dolan* and *City of Scottsdale*. Moreover, to the extent AFW asks that the *City of Scottsdale* analysis be altered, such a request is properly addressed to the Arizona Supreme Court. AFW has not shown that the *Nollan/Dolan* analysis applies here, meaning the superior court properly concluded that the traffic signal SDF is a generally applicable legislative act not subject to scrutiny under that analysis. Accordingly, AFW has not shown that Gilbert effectuated an unconstitutional taking by applying the generally applicable traffic signal SDF to AFW's development permit request.

## III. AFW Has A Statutory Right To An Exaction Administrative Appeals Hearing.

¶29 AFW argues that it should have been granted a statutory exaction appeals hearing to challenge the application of the traffic signal SDF to its development. By statute,

> a property owner may appeal the following actions relating to the owner's property by a city or town, or an administrative agency or official of a city or town, in the manner prescribed by this section:
>
> 1. The requirement by a city or town of a dedication or exaction as a condition of granting approval for the use, improvement or development of real property. This section does not apply to a dedication or exaction required in

12

a legislative act by the governing body of a city or town *that does not give discretion to the administrative agency or official to determine the nature or extent of the dedication or exaction*.

A.R.S. § 9-500.12(A)(1) (emphasis added). Gilbert denied AFW's request for such a hearing, and the superior court denied AFW's request for special action relief to compel such a hearing. That court found Gilbert's denial of AFW's protest was "supported by competent evidence and a plain language application" of Ordinance 2226 and the denial was "not arbitrary, capricious or an abuse of discretion."

¶30     Special action relief may be sought for the failure "to perform a duty required by law as to which [a party] has no discretion," or from an "arbitrary and capricious" decision. Ariz. R.P. Spec. Act. 3(a) & (c). This court reviews the denial of special action relief for an abuse of discretion, but "to the extent that the resolution of an issue depends on statutory interpretation, we review the court's ruling de novo." *Home Builders Ass'n of Cent. Ariz. v. City of Goodyear*, 223 Ariz. 193, 195 ¶ 8 (2009) (citing cases). "The right to appeal exists only by force of statute and is limited to the terms of the statute." *City of Phoenix v. Superior Court*, 110 Ariz. 155, 158 (1973). In this case, AFW had a right to an administrative appeal of Gilbert's requirement that it pay the traffic signal SDF unless that provision "does not give discretion to the administrative agency or official to determine the nature or extent of the dedication or exaction." A.R.S. § 9-500.12(A)(1). Gilbert argues it had no discretion under the traffic signal SDF, while AFW argues it did.

¶31     As stated above, under the traffic signal SDF, the per square foot rate differs significantly based on whether the structure is categorized Retail, Office, Industrial or Other Nonresidential. Gilbert Code 10-3.1(a)(5) (May 21, 2013). Gilbert determines the fee based on information provided in the permit application. The traffic signal SDF, however, does not define the categories or provide guidance in determining which category to use or how mixed-use developments should be categorized. As a result, in this case, application of the traffic signal SDF necessarily involves discretion.

¶32     Gilbert exercised its discretion when it concluded AFW's development should be categorized Retail based on the "main purpose of the building," as opposed to the majority use of the building. Gilbert adopted the International Building Code (IBC), which AFW used in its permit application. While AFW's permit application was for a 630,000 square-foot facility, it listed the following IBC occupancy codes: 178,000

square feet of mercantile (showroom), 46,000 square feet of factory (mezzanine for manufacturing and office space) and 407,000 square feet of storage (warehouse). Even though most of the building is a warehouse, Gilbert decided "the main purpose of the building is to sell furniture and ship furniture to customers." Gilbert then decided that the development would be categorized as Retail in its entirety and applied the Retail rate to the entire facility. That determination imposed a traffic signal SDF of approximately $1,000,000, which is substantially more than would have been imposed if Gilbert had determined the fee based on the specific uses for portions of the building or use of an Office or Industrial category.

¶33        Given its mixed use, Gilbert could have decided the development was Other Nonresidential. Although that phrase is not defined, Gilbert stated the phrase is "neither retail, office or industrial" and "might be a school, a church, or a hospital." Because a mixed-use property is not entirely Retail, Office or Industrial, and could be considered Other Nonresidential, Gilbert's determination that mixed-use properties are not Other Nonresidential involved the exercise of discretion. And if it had done so, the traffic signal SDF imposed could have been significantly less than what Gilbert required AFW to pay based on the Retail category determination.

¶34        As a final example, Gilbert had discretion when it categorized AFW's building as *entirely* retail. Gilbert argues it is not authorized to categorize "a retail development or structure at anything other than the retail rate or to apply different rates to various sections within a single structure." But just as Ordinance 2226 does not expressly authorize a mixed category, it does not prohibit Gilbert from assessing the traffic signal SDF based on proportional use. Proportional use would be consistent with the purpose of the traffic signal SDF: to cover costs associated with expansion of the traffic signal network required to serve new development. Gilbert Code 10-3.1(a)(5). Such a purpose could be achieved by proportioning the fee imposed by category based on stated use.

¶35        On this record, Gilbert could have selected the category (and the resulting rate) based on a majority use, used the Other Nonresidential category or proportioned the category based on stated use of the various parts of the building. That Gilbert did not do so does not, as Gilbert suggests, mean it lacked discretion to do so. Because Gilbert had discretion in determining the appropriate category and resulting fee under the traffic signal SDF, AFW had a statutory right to an exaction administrative appeals hearing to challenge its determination. *See* A.R.S. § 9-500.12(A)(1). Accordingly, the grant of summary judgment rejecting AFW's request for

special action relief to compel such a hearing pursuant to A.R.S. § 9-500.12 is vacated and this matter is remanded for further proceedings consistent with this opinion.[9]

**CONCLUSION**

¶36 Cities and towns frequently require payment of fees as a condition for the issuance of building permits. Whether those fees are to be analyzed using a "rough proportionality" test, and if so how, appears less than certain under relevant precedent. For decades, United States Supreme Court Justices have noted the continuing need for clarification in that analysis.[10] This opinion continues down that uncertain path and, in doing so, perhaps affords courts asked to consider this opinion an opportunity to further clarify the law, particularly following *Koontz*.

¶37 For now, however, and for the reasons set forth above, summary judgment is affirmed in part and vacated in part and this matter is remanded for further proceedings consistent with this opinion. More specifically, the superior court properly found the traffic signal SDF was a generally applicable legislative act and properly granted Gilbert summary judgment on counts 1, 3 and 6 of AFW's original complaint. The grant of summary judgment for Gilbert on counts 2 and 4 of AFW's amended complaint is vacated and this matter is remanded for an administrative appeals hearing to challenge the exaction pursuant to A.R.S. § 9-

---

[9] Given this conclusion, this opinion does not address AFW's argument that the use of the Retail rate was arbitrary and capricious.

[10] *See Lingle v. Chevron*, 544 U.S. 528, 539 (2005) (noting the Court's "regulatory takings jurisprudence cannot be characterized as unified"); *accord Parking Ass'n of Georgia, Inc. v. City of Atlanta*, 515 U.S. 1116, 1118 (1995) (Thomas, J., joined by O'Connor, J., dissenting from denial of certiorari) ("The lower courts should not have to struggle to make sense of this tension in our case law. In the past, the confused nature of some of our takings case law and the fact-specific nature of takings claims has led us to grant certiorari in takings cases without the existence of a conflict. . . . Where, as here, there is a conflict, the reasons for granting certiorari are all the more compelling.") (citing *Dolan* and *Nollan*); *see also Calif. Bldg. Indus. Ass'n v. City of San Jose*, 136 S. Ct. 928, 928 (2016) (Thomas, J., concurring in denial of certiorari) (similar); *City of Scottsdale*, 187 Ariz. at 486 ("Because the Scottsdale case involves a generally applicable *legislative* decision by the city, the court of appeals thought *Dolan* did not apply. We agree, though the question has not been settled by the Supreme Court.").

500.12(A)(1). Given the relief granted, the court determines that for purposes of an award of attorneys' fees, neither Gilbert nor AFW is the successful or prevailing party on appeal. AFW is, however, awarded its taxable costs contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

