# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DOUGLASS PROPERTIES II, LLC, | No.  53558-1-II |
| Appellant, | |
| v. | |
| CITY OF OLYMPIA, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Douglass Properties II LLC (Douglass) appeals a superior court order affirming the Olympia Hearing Examiner's decision regarding transportation impact fees (traffic impact fees).  That order upheld the imposition of $167,580 in traffic impact fees as a condition of the City of Olympia's issuance of a building permit to construct a storage facility.  Douglass argues that the hearing examiner's decision was erroneous because it (1) made findings of fact and conclusions of law without placing the burden of proof on the City to establish that the traffic impact fees were roughly proportionate to the impacts of Douglass's project as required by *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed .2d 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) (*Nollan/Dolan* test),[1] and (2) failed to conclude that the City's traffic impact fees were excessive and not roughly proportionate.  We affirm.

---

[1] Together these cases require a nexus and rough proportionality between a government's demand and the effects of development when the government demands that a landowner relinquish a portion of his property as a condition of a land use permit.

FACTS

I. BACKGROUND

A.      *Permit Application*

In 2016 and 2017, Douglass applied for building permits for a mini storage warehouse facility in Olympia. In accordance with the Transportation Impact Fee Rate Schedule in Olympia Municipal Code (OMC) 15.16.040, the City calculated the traffic impact fees and conditioned Douglass's permits based on those calculated fees. Douglass's proposal included 7 buildings. Building 1 and Buildings 3 through 7 were calculated at a rate of $1.29 per square foot of gross floor area according to the 2016 OMC, but Building 2 was calculated at $1.33 per square foot of gross floor area according to the 2017 OMC.[2] Although OMC 15.04.050(C) and (E) contained provisions to allow Douglass to request an independent fee analysis, Douglass declined to request an analysis. Douglass also declined to prepare its own independent fee calculation, as provided for under OMC 15.04.050(D). In 2018, Douglass paid all the impact fees. As to Building 2 only, Douglass paid these fees under protest and appealed the impact fee determination.

B.      *City of Olympia Hearing Examiner*

In 2018, the City's hearing examiner held a hearing to consider Douglass's appeal. At the onset of the hearing, the hearing examiner stated that Douglass had the burden of proof to

---

[2] Building 2 contained 126,000 square feet, which resulted in a traffic impact fee of $167,580 when multiplying 126,000 times $1.33. The $1.33 per square foot multiplier is based on the following calculation: peak trips per thousand square feet (.26) times number of trips that are new trips (1), times standard length compared to average trip length of 3.0 miles ("trip adjustment variable") (1.7), times cost of each new trip ($2,999).

show that the City's traffic impact fee for Building 2 was "clearly erroneous." Clerk's Papers (CP) at 58. The parties then presented evidence in the form of exhibits and witness testimony.

The OMC contains a formula to calculate a traffic impact fee, which the City employed to calculate the impact fees here. OMC 15.16.040 Schedule D, "Transportation Impact Fees." This formula includes a number of variables.

Douglass challenged three of these variables: the number of trips per peak hour, the percentage of new trips, and the trip adjustment variable. Douglass argued the traffic impact fee should have been modified consistent with its own calculations, notwithstanding that Douglass neither requested an independent impact fee calculation from the City, nor submitted his own independent impact fee calculation for consideration prior to issuance of the permit.[3] Douglass urged the hearing examiner to either find the City's impact fee to be clearly erroneous or, in the alternative, to undertake an independent fee calculation and determine a new fee that was consistent with Douglass's alternative calculation. Douglass contended that a failure to adjust the City's impact fee would be a violation of due process under *Nollan* and *Dolan*.[4]

---

[3] Douglass argued that peak trips per thousand square feet should be .17, number of trips that are new trips should be .75, and the standard length compared to average trip length (trip adjustment variable) should be 1, resulting in an impact fee of $48,178.93. Although the City's ordinances presume that its own impact fee schedule calculations are valid under OMC 15.04.050(F), under OMC 15.04.050(C) a permit applicant can submit his own independent fee calculation *prior to* issuance of any building permit and the City may consider such independent fee calculation.

[4] *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). The *Nollan* and *Dolan* cases are landmark Fifth Amendment takings cases. "[*Nollan* and *Dolan*] held that the government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a nexus and rough proportionality between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 595, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013).

3

The City presented evidence from its own expert, Don Samdahl, regarding the methodology used by the City to calculate traffic impact fees. The City also showed that it formally adopted a transportation study prepared for the city, which included the formula for calculating traffic impact fees. The transportation study formula for calculating such fees included the factors required by RCW 82.02.060, including:

- The cost of public facilities necessitated by new development;
- Adjustments to the cost for past or future payments by developers (including user fees, debt service payments, taxes or other fees);
- The availability of other funding sources;
- The costs of existing facilities improvements;
- The methods by which existing facilities were financed;
- Credit for the value of any dedication of land to facilities identified in the capital facilities plan and required as a condition of approval;
- Adjustments for unusual circumstances; and
- Consideration of studies submitted by the developer.

CP at 293.

Following the hearing, the hearing examiner denied Douglass's appeal, deciding that the impact fee was correctly calculated in accordance with the ordinance. The hearing examiner concluded that it did not have the authority to overrule *City of Olympia v. Drebick*,[5] which the hearing examiner concluded was the controlling authority. The hearing examiner reaffirmed that Douglass had the burden of proof at the hearing, and that the three challenged variables were not clearly erroneous. The hearing examiner further concluded that the City's actions were not clearly erroneous when the City did not extemporaneously conduct an independent fee

---

[5] 156 Wn.2d 289, 293, 126 P.3d 802 (2006). Our Supreme Court in *Drebick* held that impact fees under RCW 82.02 do not require an individualized assessment of a development's direct impact.

No. 53558-1-II

assessment, and that a hearing examiner had no authority to conduct or consider an independent fee assessment for the first time on appeal.

C.      *Judicial Review*

Douglass filed an appeal to the superior court for judicial review under the Land Use Petition Act, RCW 36.70C (LUPA). The superior court affirmed the decision of the hearing examiner. Douglass now appeals to this court.

ANALYSIS

Douglass argues that the City's traffic impact fee is subject to Fifth Amendment scrutiny because it amounts to a regulatory taking of his property. Douglass argues that because the fee is a regulatory taking, the City had the burden to prove to the hearing examiner that the fees had a nexus and were roughly proportional, as required by *Nollan* and *Dolan*. We hold that the *Nollan/Dolan* test does not apply to the traffic impact fees, because such fees are legislatively prescribed generally applicable fees outside the scope of *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 595, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013), and that *Drebick* still controls. Thus, we hold that the hearing examiner did not err when it ruled that Douglass had the burden of proof at the hearing and that Douglass failed to meet that burden. We further hold that the hearing examiner's conclusions were not erroneous.

I. LEGAL PRINCIPLES AND STANDARDS OF REVIEW

A.      *Standards of Review*

We review a LUPA action under chapter 36.70C RCW. *Ellensburg Cement Products, Inc. v. Kittitas County*, 179 Wn.2d 737, 742, 317 P.3d 1037 (2014). We stand in the same position as the superior court, and review the record that was before the hearing examiner.

5

*Ellensburg Cement Products*, 179 Wn.2d at 742. The party seeking relief has the burden of establishing any of the following standards:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

Standards (a), (b), (c), (d), and (f) are at issue in this case. Standards (a), (b), (e), and (f) contain questions of law that we review de novo. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828-829, 256 P.3d 1150 (2011).

For standard (c), we review all facts and inferences in a light most favorable to the party that prevailed in the highest fact-finding forum to decide challenges to the sufficiency of the evidence, and then determine whether sufficient evidence exists in the record to persuade a reasonable person of the truth asserted by the alleged facts. *Phoenix*, 171 Wn.2d at 828-829.

For standard (d), only when we are left with "the definite and firm conviction that a mistake has been committed," do we decide an application of law to the facts is clearly erroneous. *Phoenix*, 171 Wn.2d at 828-829.

We adhere to "the fundamental principle that if a case can be decided on nonconstitutional grounds, an appellate court should refrain from deciding constitutional issues."

No. 53558-1-II

*Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002),

*abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019).

B.      *State Law*

RCW 82.02.050 authorizes the imposition of impact fees.  The statute limits how

municipalities can implement impact fees, stating that such fees

> (a) Shall only be imposed for system improvements that are reasonably related to the new development;
> (b) Shall not exceed a proportionate share of the costs of system improvements that are reasonably related to the new development; and
> (c) Shall be used for system improvements that will reasonably benefit the new development.

RCW 82.02.050(4).

An "impact fee" is defined as

> a payment of money imposed upon development as a condition of development approval to pay for public facilities needed to serve new growth and development, and that is reasonably related to the new development that creates additional demand and need for public facilities, that is a proportionate share of the cost of the public facilities, and that is used for facilities that reasonably benefit the new development.  "Impact fee" does not include a reasonable permit or application fee.

RCW 82.02.090(3).

"'Proportionate share' means that portion of the cost of public facility improvements that

are reasonably related to the service demands and needs of new development."  RCW

82.02.090(6).

Local ordinances imposing impact fees under RCW 82.02.050 must include a schedule of

impact fees for each type of development activity subject to the fees.  RCW 82.02.060(1).  The

schedule must specify "the amount of the impact fee to be imposed for each type of system

improvement" and must be "based upon a formula or other method of calculating such impact

7

fees." RCW 82.02.060(1). The formula or method of determining "proportionate share" in a schedule of impact fees must, at a minimum, include:

> (a) The cost of public facilities necessitated by new development;
> (b) An adjustment to the cost of the public facilities for past or future payments made or reasonably anticipated to be made by new development to pay for particular system improvements in the form of user fees, debt service payments, taxes, or other payments earmarked for or proratable to the particular system improvement;
> (c) The availability of other means of funding public facility improvements;
> (d) The cost of existing public facilities improvements; and
> (e) The methods by which public facilities improvements were financed.

RCW 82.02.060(1).

In addition to an impact fee schedule, the local ordinance must "include a provision for calculating the amount of the fee to be imposed on a particular development that permits consideration of studies and data submitted by the developer to adjust the amount of the fee." RCW 82.02.060(6).

Local governments are required to provide an administrative appeals process, which may follow either the underlying development approval process or a process separately established by the local government. RCW 82.02.070(5). Impact fees in the administrative appeal process can be modified under "principles of fairness." RCW 82.02.070(5).

Title 82 RCW contemplates other types of impact fees that may be authorized under alternative statutes which are necessary as a direct result of the proposed development (in contrast to the traffic impact fees in the instant case) and carves out an exception to the preemption section under RCW 82.02.020:

> [T]his section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a *direct result* of the

proposed development or plat to which the dedication of land or easement is to apply.

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment *in lieu of* a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat.

RCW 82.02.020 (emphasis added).

C.    *Local Ordinance*

The City enacted OMC 15.04.040 to collect transportation impact fees under RCW 82.02.050. Schedule D, in OMC 15.16.040 includes the transportation impact fees at issue here. The fees in Schedule D, are generated by the transportation study formula, and the fees are outlined in the "2009 Transportation Impact Fee Collection Rate Document." OMC 15.08.050(A). Schedule D is reviewed annually to consider adjustments "to account for system improvement cost increases due to increased costs of labor, construction materials and real property." OMC 15.08.050(B).

## II. LEGISLATIVELY IMPOSED GENERALLY APPLICABLE FEE

Douglass argues that the City's fee scheme is unlawful because it fails to comply with the proportionality requirements under state and federal law, specifically RCW 82.02.050(4) and *Nollan/Dolan* scrutiny by extension from *Koontz v. St. Johns River Water Management District*, 570 U.S. 595. Douglass also argues that *Drebick* is no longer controlling law. We disagree.

A.    *Discussion*

Douglass makes several arguments based on an underlying premise that the *Nollan/Dolan* test applies to the traffic impact fees assessed here. Specifically, Douglass argues that after *Koontz*, *Drebick* no longer controls. We disagree.

The takings clause of the Fifth Amendment provides, "[N]or shall private property be taken for public use, without just compensation." Similarly, article I, section 16 provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made." WASH. CONST. art. I, § 16.

In the cases of *Nollan* and *Dolan*, the Supreme Court relied on the Fifth Amendment to hold that the government cannot condition approval of a land use permit on the conveyance of real property unless there is a nexus and rough proportionality between the government's demand and the effects of the proposed land use. *Nollan*, 483 U.S. at 837; *Dolan*, 512 U.S. at 386. The case of *Koontz v. St. Johns River Water Management District.*, extended the *Nollan/Dolan* requirement to certain "monetary exactions." 570 U.S. at 612. The nexus test requires conditions of development to be necessary to mitigate a specific adverse impact of a proposal. *Nollan*, 483 U.S. at 837. The rough proportionality test limits the extent of required mitigation measures to those that are roughly proportional to the impact they are designed to mitigate. *Dolan*, 512 U.S. at 391. *Olympic Stewardship Found. v. State Env't & Land Use Hearings Off. through W. Wash. Growth Mgmt. Hearings Bd.*, 199 Wn. App. 668, 747, 399 P.3d 562 (2017). Taxes and user fees are not "takings" subject to Fifth Amendment scrutiny. *Koontz*, 570 U.S. at 615 (quoting *Brown v. Legal Found. of Washington*, 538 U.S. 216, 243, n. 2, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003)) (Scalia, J., dissenting).

As stated above, *Koontz* extended the *Nollan/Dolan* rule to certain "monetary exactions." In *Koontz*, the government refused to issue water permits to a land owner unless the landowner either deeded to the government an easement over land not being developed, or paid for improvements to noncontiguous government owned land. *Koontz*, 570 U.S. at 601-602. This fee

10

scheme was "imposed ad hoc," and was "not . . . generally applicable" to permit applicants. *Koontz*, 570 U.S. at 628 (Kagan, J., dissenting). In applying the *Nollan/Dolan* test to this scheme, the court stressed that it was not expanding *Nollan* and *Dolan* much beyond its narrow confines, stating:

> [Koontz's] claim rests on the . . . *limited proposition* that when the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a "per se [takings] approach" is the proper mode of analysis under the Court's precedent.

*Koontz*, 570 U.S. at 614 (emphasis added) (quoting *Brown*, 538 U.S. at 235).

Prior to *Koontz*, courts across the country generally held that the *Nollan/Dolan* test was limited to adjudicative and ad hoc exactions, and did not apply to more broadly applicable legislative exactions.[6] Washington weighed in on this issue in the case of *City of Olympia v. Drebick*, 156 Wn.2d 289.

In *Drebick*, the hearing examiner ruled that a city's impact fee did not comply with RCW 82.02.050 because it failed to require an individualized assessment of a new development's direct impact on each improvement planned in a service area. 156 Wn.2d at 309. Our Supreme Court reversed. 156 Wn.2d at 309. The appellant in *Drebick* sought an independent fee calculation adjustment before it challenged whether the City's ordinance complied with state law. 156 Wn.2d at 293. The Court explained that because GMA impact fees were legislatively prescribed development fees, *Nollan/Dolan* was not applicable, noting the distinctions from

---

[6] Michael Castle Miller, *The New Per Se Takings Rule: Koontz's Implicit Revolution of the Regulatory State*, 63 Am. U.L. Rev. 919, 947 (2014).

other jurisdictions where Fifth Amendment scrutiny did apply but only to fees that were direct

mitigation and in lieu of possessory exactions. *Drebick*, 156 Wn.2d. at 302.

Subsequent to *Koontz*, a number of courts have considered the issue and continue to hold

that the *Nollan/Dolan* test does not apply to generally applicable legislative decisions.[7]

Although the decision in *Drebick* was based on statutory construction, the distinction

observed between "direct mitigation fees" and those "legislative prescribed development fees"

from the GMA is instructive. 156 Wn.2d at 303. The same important factual distinction that our

Supreme Court explained in *Drebick* exists here between the traffic impact fees in the instant

case and those found in *Koontz*. The fees in *Koontz* were "not . . . generally applicable" to all

permit applicants. 570 U.S. at 628 (Kagan, J., dissenting). Additionally, the fee imposed in

*Koontz* was in lieu of a conveyance of a conservation easement. 570 U.S. at 617. Although

*Koontz* expanded the scope of takings that require *Nollan/Dolan* scrutiny to include "monetary

exactions," it did not expand that scope to include legislatively prescribed development fees like

those at issue here. Moreover, the language in *Koontz* clearly intended to limit its application, by

explaining that the funds there were linked to a specific, identifiable property interest. We

therefore conclude that *Koontz* does not invalidate *Drebick's* holding with respect to legislatively

imposed generally applicable fees because these fees are outside the scope of *Koontz*.

Douglass also relies on *Honesty in Environmental Analysis and Legislation (HEAL) v.*
*Central Puget Sound Growth Management Hearings Board*, 96 Wn. App. 522, 533, 979, P.2d

---

[7] *See, e.g.*, *Am. Furniture Warehouse Co. v. Town of Gilbert*, 245 Ariz. 156, 163, 425 P.3d 1099
(Ariz. Ct. App. 2018); *Better Hous. for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 932 (C.D.
Cal. 2020); *Dabbs v. Anne Arundel Cnty.*, 458 Md. 331, 357, 182 A.3d 798 (2018).

864 (1999), a pre-*Koontz* case, to argue that *Nollan/Dolan* scrutiny applies to the City's traffic impact fees. In *HEAL*, Division One of this court explained that *Nollan*/*Dolan* scrutiny is required under the Growth Management Act, 36.70A RCW, for conditions other than an outright dedication of land, but that case did not specifically address impact fees. *HEAL*, 96 Wn. App. at 534. *HEAL* only concerned itself with the denial of a project based on less than "only the best available science [that] could provide its policy-makers with facts supporting those policies and regulations which, when applied to an application, will assure that the nexus and rough proportionality tests are met." 96 Wn. App. at 534. *HEAL*'s holding is immaterial to the instant case involving monetary exactions imposed based on a statutory formula.

We hold that *Drebick* is still good law, and that *Nollan/Dolan* scrutiny does not apply to the legislatively prescribed development traffic impact fees at issue in this case subsequent to *Koontz*. Thus, the hearing examiner did not err by concluding that the *Nollan/Dolan* rule did not apply.

### III. HEARING EXAMINER RULINGS

A. *Imposing Burden of Proof on Appellant Not Clearly Erroneous*

Douglass argues that the hearing examiner's ruling was clearly erroneous when it ruled that Douglass had the burden of proof under the OMC. Douglass contends that the City, as the governmental agency attempting to impose a fee, had a burden to show that the traffic impact fees met the *Nollan/Dolan* test. The City argues that Douglass had the burden of proof as prescribed by the City ordinance which is based on LUPA. Because the *Nollan/Dolan* test does not apply to legislatively prescribed impact fees, and because this is a LUPA appeal where the

City's ordinance was explicit in giving the challenger the burden of proof, we agree with the City.

Douglass relies on *Isla Verde International Holdings v. City of Camas*, 146 Wn.2d at 763 n.16, to argue that the City bears the burden of proof to show adequate proportionality under RCW 82.02.050(4). But *Isla Verde International Holdings* was a case concerning RCW 82.02.020, not RCW 82.02.050. 146 Wn.2d at 753-54; *see Drebick*, 156 Wn.2d at 302 (distinguishing *direct* mitigation fees like those referred to in RCW 82.02.020 from legislatively prescribed development fees). The court in *Isla Verde International Holdings* construed the burden of proof from the plain language of that wholly separate statute, which contains language that does not appear in the provision at issue here. 146 Wn.2d at 761.[8] Moreover, the development fees in *Isla Verde International Holdings* were not legislatively imposed generally applicable fees like those imposed here. The fees in *Isla Verde International Holdings* were statutory exceptions to the preclusive effect of RCW 82.02.020. 46 Wn.2d at 755. "[T]he burden of establishing a statutory exception is on the party claiming the exception." *Home*

---

[8] RCW 82.02.020 provides:

> However, this section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation *can demonstrate* are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.
> . . . .
> (3) . . . .
> No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation *cannot establish* is reasonably necessary as a direct result of the proposed development or plat.

(Emphasis added).

*Builders Ass'n of Kitsap Cnty. v. City of Bainbridge Island*, 137 Wn. App. 338, 347, 153 P.3d 231 (2007) (citing *Isla Verde*, 146 Wn.2d at 759).

As discussed above, *Nollan/Dolan* scrutiny does not apply to legislatively derived traffic impact fees such as the traffic impact fee in this case, so Douglass's argument fails. Because the fees at issue here are not subject to the *Nollan/Dolan* test, the City did not have a burden to show a nexus or proportionality. Instead, the hearing examiner correctly observed the OMC which states, "The examiner shall only grant relief requested by an appellant upon finding that the appellant has established that . . . ," and then goes on to describe the means in which an appellant can prevail. OMC 18.75.040(F). The language clearly requires the appellant has to "establish" the factual basis for the findings of fact and conclusions of law, thus bearing the burden of proof. OMC 18.75.040(F).

We hold that the hearing examiner's ruling that Douglass had the burden of proof under the OMC was not clearly erroneous.

B.      *Validity of Fee Not Clearly Erroneous*

Douglass argues that the hearing examiner's ruling regarding the traffic impact fee was clearly erroneous because the fees were excessive and not roughly proportionate. Specifically, Douglass argues that three of the variables the City used in its calculation caused the fees to be excessive and not proportional. The City contends that Douglass is attempting to "rewrite the City's ordinance without complying with the procedural requirements that allow consideration of alternative fee calculations." Br. of Resp't at 33. The City argues that its fees are "presumptively valid enactments of the City's legislative body," and that they are rationally based on the same methodology upheld in *Drebick*. Br. of Resp't at 40. We hold that the

15

hearing examiner's decision to uphold the fee calculation based on the requisite City ordinance was not clearly erroneous.

The hearing examiner rejected all of Douglass's challenges to the City's fee calculation that were based on its own independent information unique to its own project. The hearing examiner found that each of the three challenged variables was supported by the widely accepted trip generation manual, which was the same manual from *Drebick*, according to Samdahl's testimony at the hearing. The hearing examiner reasoned that each of the City's decisions to adhere to Schedule D calculations was not a clearly erroneous application of the law to the facts. This is the standard of review under OMC 18.75.040(F)(4). OMC 15.04.050 required Douglass to submit its independent fee calculation before obtaining its permit, but it failed to do so. If an independent fee calculation under OMC 15.04.050 is not submitted timely to the City, the City is allowed to collect impact fees based on the schedules in Chapter 15.16 OMC. We hold that the hearing examiner's decision to uphold the City's fee calculation based on the requisite City ordinance was not clearly erroneous.

## ATTORNEY FEES

The City argues that it is entitled to an award of reasonable attorney fees and costs. Because the City is the prevailing party, we agree.

In a LUPA appeal, the prevailing party on appeal is entitled to an award of its reasonable attorney fees and costs. RCW 4.84.370(1). Under the LUPA statute, the prevailing party is the party that prevailed or has substantially prevailed before the county, city, or town, and has prevailed or substantially prevailed before this court or the Supreme Court, and has prevailed or substantially prevailed in all subsequent judicial proceedings. RCW 4.84.370(1)(a), (b). The

No. 53558-1-II

City prevailed before the hearing examiner, at the superior court, and on this appeal, and is thus entitled to an award of its attorney fees under RCW 4.84.370 and RAP 18.1

CONCLUSION

In conclusion, we hold that the *Nollan*/*Dolan* test does not apply to the traffic impact fees in this case, because such fees are legislatively prescribed generally applicable fees outside the scope of *Koontz*, and that *Drebick* still controls. Thus, we hold that the hearing examiner did not err when it ruled that Douglass had the burden of proof at the hearing and that Douglass failed to meet that burden. We further hold that the hearing examiner's conclusions were not erroneous. Finally, we hold that the City is entitled to its reasonable attorney fees. We affirm.

_____
Worswick, P.J.

We concur:

_____
Glasgow, J.

_____
Cruser, J.

17